IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CITIMORTGAGE, INC.                  :
                                    :
                                    :
    v.                              :   Civil Action No. DKC 13-1641
                                    :
LEROY HOLMES, et al.                :
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for review in this priority of liens case is the motion for partial summary judgment filed by Defendant United States. (ECF No. 12). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion will be granted.

I. **Background**[1]

This case involves the question of the priority of liens in real property owned by Defendants Leroy Holmes and Byrdie Blizzard-Holmes in Upper Marlboro, Maryland ("Property"). On December 7, 2002, the Holmeses refinanced their mortgage on the Property using proceeds obtained from a loan granted by Ameriquest Mortgage Company in the amount of $159,750 in

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

exchange for a deed of trust to the Property ("Ameriquest DOT"). This deed of trust was recorded in the land records of Prince George's County on January 27, 2003. (ECF No. 1 ¶ 11; No. 1-3). On October 20, 2006, Mr. Holmes pled guilty to one count of conspiracy to commit money laundering, 18 U.S.C. § 1956(h). Judgment for restitution was entered in the United States District Court for the District of Columbia in the amount of "$961.820" or "$961.82." (ECF No. 1-4). On August 21, 2007, the United States filed a Notice of Lien against Mr. Holmes in the amount of $961,820.00 with the Circuit Court for Prince George's County. (ECF No. 1-5). On February 21, 2008, the Holmeses refinanced the Ameriquest DOT by using proceeds obtained from a loan granted by Plaintiff in the amount of $204,015.00. The loan was granted under the condition that it would be secured by a first-priority lien against the Property, as the loan proceeds satisfied the then existing Ameriquest DOT which held a first-priority lien at the time of satisfaction. The unpaid principal of the Ameriquest DOT at the time was $154,377.06. The CitiMortgage DOT was recorded in the land records of Prince George's County on April 16, 2008. (ECF No. 1-6). According to the complaint, "[t]he proceeds of the loan were intended to pay off all existing liens on and against the [] Property. Due to error or mistake, a title report commissioned prior to closing did not uncover the Notice of Lien

filed by the United States of America. Therefore, the judgment in favor of the United States . . . was not paid off at closing." (ECF No. 1 ¶ 15). On December 6, 2012, Mr. Holmes's sentence was corrected for clerical mistake pursuant to Fed.R.Crim.P. 36, changing the amount of restitution ordered to $961,820.00. (ECF No. 1-11).

Plaintiff filed a five count complaint in this court on June 6, 2013 against the Holmeses, Kettering Community Association, Inc., State Farm Mutual Auto Insurance Company, and the United States.[2] Plaintiff alleges breach of contract and unjust enrichment against the Holmeses and seeks $500,000 in damages. The remainder of its claims sound in equitable subrogation and quiet title and seek a judgment that the CitiMortgage DOT in the amount of $204,015 is a first-priority lien interest on and against the Property or, in the alternative, is a second-priority lien, junior to the United States' first-priority judgment lien in the amount of $961.82. The complaint and summonses were properly served upon the Holmeses, Kettering, and State Farm, but none responded to the complaint. Consequently, default was entered against State Farm on September 16, 2013, and the Holmeses and Kettering on January 13, 2014. (ECF Nos. 13, 27, and 28). On September 16, 2013,

---

[2] According to the complaint, Kettering and State Farm each have liens against the Property.

the United States filed a motion for partial summary judgment on Plaintiff's claim under the doctrine of equitable subrogation (Count III). (ECF No. 12). Plaintiff opposed the motion on October 28, 2013 (ECF No. 16), and the United States replied on December 12, 2013 (ECF No. 25).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine dispute for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to

judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

### III. Analysis

Count III of the complaint seeks a judgment that the entire amount of the CitiMortgage DOT is a first-priority lien against the Property under the doctrine of equitable subrogation. The United States contends that, to the contrary, CitiMortgage is only entitled to first priority for the first $159,750 it loaned.

"Broadly defined, subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. . . . The party subrogated acquires all rights, securities, and remedies the creditor has against the debtor and is regarded as constituting one and the same person with the creditor whom he succeeds." *Rinn v. First Union Nat'l Bank of Md.*, 176 B.R. 401, 407-08 (D.Md. 1995). The Court of Appeals of Maryland has explained how equitable subrogation applies to mortgage refinancing:

6

> Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien. Although stressed in some cases as an objection to relief, neither negligence nor constructive notice should be material.

*G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 231-32 (1995) (*quoting* G.E. Osborne, *Handbook on the Law of Mortgages* § 282, at 570 (2$^d$ ed. 1970)).

The United States acknowledges that its lien was junior to the earlier-in-time Ameriquest loan in the original principal amount of $159,750.[3] But the government argues that the difference between the CitiMortgage loan and the remainder of the amount of the Ameriquest loan is subordinate to the United States' lien, as the CitiMortgage DOT was filed after the United States' lien. The government does not dispute that Plaintiff did not have actual knowledge of the government lien, but argues that this ignorance should not be rewarded by allowing Plaintiff to jump ahead of the government. Regardless of whether the lien is for $961.82 or $961,820, there is no dispute that there was a

---

[3] Plaintiff alternates between $159,750 and $159,705. The deed of trust, attached to the complaint, reflects that the correct amount is $159,750. (ECF No. 1-3, at 3).

lien held by the government on the record when CitiMortgage filed its lien and CitiMortgage failed to discover that lien.

Plaintiff responds that any apparent negligence on its part is immaterial where, as here, the intervening lienholder was not prejudiced. According to Plaintiff, it is admitted that the United States' lien was junior to the Ameriquest DOT paid off by the CitiMortgage loan, and thus the government was not prejudiced by the loan.

Maryland courts excuse a lienholder's negligence in discovering other liens only when the other lienholders are not affected negatively. *See, e.g., G.E. Capital*, 338 Md. at 240-42; *Bennett v. Westfall*, 186 Md. 148, 154-55 (1946); *Glen Burnie Mut. Sav. Bank v. United States*, 733 F.Supp.2d 623, 628 (D.Md. 2010); *In re Taylor*, No. 07-10977-TJC, 2008 WL 4225761, at *7 (Bankr.D.Md. Sept. 10, 2008). Otherwise, the other lienholders would reap a windfall by being able to jump over the negligent lienholder who desired to step into the shoes of the priority lien. While negligence in discovering competing liens is not to be encouraged – and Maryland courts have suggested that *actual* knowledge of an intervening lien would prevent equitable subrogation, *G.E. Capital*, 338 Md. at 243 – such negligence will be excused when it results in no harm to the competing lienholders. *See Bennett*, 186 Md. at 155 ("[appellant's] position is: You made a mistake, it did me no harm; in fact,

resulted in greatly benefiting me. Therefore, you can not [*sic*] have your mistake corrected. This position has no appeal to a court of equity."). Plaintiff's argument that its *entire* loan should be given first priority because the government was not prejudiced requires one to adopt a curious definition of "prejudiced." Plaintiff seems to argue that not only should its allegedly negligent ignorance be excused, but that ignorance should be used as a vehicle to claim a larger first-priority lien than its predecessor Ameriquest possessed. Plaintiff's argument that the government is no worse off because the amount of its lien has remained constant can be easily dismissed. The status of one's lien not only depends on its own status in terms of size and priority, but also the size and priority of all competing liens. In this case, before Plaintiff entered the scene, the government sat in second position, behind Ameriquest's $159,750 lien. Now, if Plaintiff's argument is accepted, the government will still be in second position, but now sits behind a $204,015 lien. The government will have to wait for an additional $43,000 to be paid out before it can collect. That plainly places the government in a worse position.

Judge Catliota encountered a similar situation in *Taylor*, 2008 WL 4225761. There, a homeowner refinanced his mortgage by taking out another loan. The new loan was intended to satisfy

9

fully the old mortgage. There were some funds left over which went to the homeowner. The new creditor was negligent and did not discover that a judgment lien was entered against the homeowner after the old mortgage, but before the new mortgage, was filed. The creditor sought to maintain first priority held by the old mortgage through equitable subrogation. Judge Catliota granted the creditor's request because creditor negligence is not a reason to deny extension of equitable subrogation in Maryland absent harm to other parties. The holder of the judgment lien argued that it was harmed because the homeowner received the extra funds as part of the refinance. Judge Catliota was not persuaded: "this would cause [the judgment lien holder] harm only if [the creditor] was seeking to be equitably subrogated for the entire amount of the [] loans – but it is not. By seeking to be equitably subrogated only to the amount [the creditor] advanced to pay off the [old mortgage], [creditor] does not seek to place [judgment lien holder] in any position other than it was in at the time of the refinance." *Id.* at *7. The same logic applies here. Plaintiff, is entitled to, at most, the amount it advanced to pay off the Ameriquest DOT.[4]

---

[4] Plaintiff seems to acknowledge as much in its opposition, writing that it is not claiming equitable subordination beyond the amount necessary to satisfy the Ameriquest DOT. Plaintiff

The parties have also briefed the issue concerning the amount of the Government's lien. Plaintiff argues that the United States is only entitled to have $961.82 in second-priority because the remainder was an inchoate lien, as the amount of the lien was not definite on the date of the CitiMortgage DOT.[5] The United States claims that the correct amount is $961,820.00. Count III does not specify any amount of the liens asserted to be junior. Instead, it only seeks a determination that Plaintiff's DOT is first priority under the doctrine of equitable subrogation. The amount of the Government's lien is encompassed, albeit obliquely, in Counts I and II, as to which the Government did not seek partial summary judgment. Nevertheless, the arguments addressed by the parties can be resolved.

---

admits that the United States held a lien for what it argues is $961.82 which takes second priority. The remainder of the lien of the CitiMortgage DOT would be third-priority, and the remainder of the lien held by the United States would be fourth priority. (ECF No. 7).

[5] Plaintiff also argues that "[a]s a matter of law, even though notice of lien is recorded, the lien shall not be valid against the holder of a security interest if, at the time the interest came into existence, the holder did not have actual notice or knowledge of the existence of the lien." (ECF No. 16, at 4). Plaintiff cites 26 U.S.C. § 6323(b)(1) for this proposition. What Plaintiff fails to recognize, however, is that this actual notice requirement only applies to federal tax liens imposed by Section 6321.

A choate lien is one that is definite as to the identity of the lienor, the property subject to the lien, and the amount of the lien. *United States v. City of New Britain*, 347 U.S. 81, 84 (1954). According to Plaintiff, only once a lien becomes choate can it take its position in the priority line. At the time Plaintiff's lien was filed, the judgment entered in the District Court was $961.82, while the amount filed with the Circuit Court for Prince George's County was $961,820.00, thereby making the lien amount indefinite and thus inchoate. According to Plaintiff, the United States was aware of the inchoate nature of its lien as evidenced by its action to amend the judgment in 2012 and correct the amount of restitution owed.

Plaintiff's argument is misplaced. Its argument concerning inchoate liens cites to Section 13-1 of *Gordon on Maryland Foreclosures* (4th ed. 2004). But this section is specific to the priority given to federal tax liens and discusses the inchoate nature of liens held by private parties, not the government. All Maryland appellate cases that have discussed inchoate versus choate liens have done so in this context. *See, e.g.*, *Williams & Connolly v. Brown*, 84 Md.App. 640, 646-47 (1990); *Back v. Internal Revenue Serv.*, 51 Md.App. 681, 687-88 (1982); *Angelos v. Md. Cas. Co.*, 38 Md.App. 265, 274-75 (1977). Plaintiff has pointed to no authority that this distinction applies outside the federal tax lien context. Even assuming this doctrine

applied, Plaintiff's argument that the scrivener's error in the criminal judgment means that the lien amount was not definite at the time of the CitiMortgage DOT is unpersuasive.  A lien is choate when there is nothing more to be done: "when the identity of the lienor, the property subject to the lien and the amount of the lien are established."  *City of New Britain*, 347 U.S. at 84.  For example, a lien is inchoate if it is contingent upon a lawsuit's outcome because the fact and the amount of the lien were contingent upon the outcome of the suit for damages.  *United States v. Acri*, 348 U.S. 211, 214 (1955).  Plaintiff does not dispute that a restitution judgment was entered against Mr. Holmes and that $961,820 is the correct amount.  It also does not dispute that the United States filed a notice of judgment lien in the Circuit Court for the correct amount.  It is not disputed that Plaintiff's title search missed the judgment lien filed in the Circuit Court for Prince George's County.  Plaintiff argues that allowing the United States retroactively to amend the judgment would cause it severe prejudice because "it would effectively extinguish Plaintiff's lien on the Property."  (ECF No. 16, at 5).  This argument will not be credited as the United States is not seeking to extinguish all of Plaintiff's lien, just the priority of that amount beyond the Ameriquest DOT.  "[T]he basic purpose of the equitable subrogation doctrine is to prevent unjust enrichment."  *G.E.*

13

*Capital*, 338 Md. at 245. To punish the government for a scrivener's error that was not even made on the operative form noticing the judgment lien filed in the Circuit Court would unjustly enrich Plaintiff.

**IV. Conclusion**

For the foregoing reasons, the motion for partial summary judgment filed by Defendant United States will be granted. A separate order will follow.

>                         /s/
> DEBORAH K. CHASANOW
> United States District Judge